KARNS v. W. L. IMLAY RAPID CYANIDE PROCESS CO. et al.

(Circuit Court, E. D. Pennsylvania.   October 3, 1910.)

No. 477.

COURTS (§ 357*)—COSTS (§ 136*)—SECURITY FOR PAYMENT—POWER OF FEDERAL
COURT OF EQUITY TO REQUIRE—WAIVER OF RIGHT.

A federal court of equity has power to require a nonresident plaintiff to give security for costs, without any statute or rule of court specially providing therefor; but the exercise of such power is discretionary, and security will not be required where the nonresidence of plaintiff was disclosed by the bill, but defendant made no motion therefor for several months, during which the issues have been made up and a large part of the testimony has been taken.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 357;* Costs, Cent. Dig. §§ 531–536; Dec. Dig. § 136.*]

In Equity.   Suit by B. F. Karns against the W. L. Imlay Rapid Cyanide Process Company and others.   On motion that plaintiff enter security for costs.   Motion denied.

J. H. McCreery, for plaintiff.
W. H. G. Gould, for defendants.

J. B. McPHERSON, District Judge.   The Circuit Court of this district has no general rule requiring a nonresident plaintiff in equity to enter security for costs, although such a rule exists on the law side of the court.   Neither has the subject been dealt with either by a rule of the Supreme Court or a federal statute, or by an act of assembly in Pennsylvania or a rule of the appellate court of the state.   The authority of the Circuit Court to require the security must therefore be found, if anywhere, in the ancient and established practice of the English chancery and of our own equity tribunals.   The plaintiff's objection to the motion rests mainly on the argument that a court of equity does not ordinarily require the security—the reason being (so it is said) that a court of equity has ample power to enforce a decree for costs by attaching the plaintiff's person, whereas a court of law may only issue execution against his property.   No doubt an attachment for contempt is a more drastic remedy than a fi. fa., but it cannot be made effective unless the plaintiff's person is within the court's jurisdiction; and it is probably safe to assume that (being a nonresident) this is precisely the place he is likely to avoid.   But the question need not be discussed upon principle; it is well settled by authority that courts of equity have long exercised the power to require a nonresident plaintiff to enter security.   In volume 1 of Daniell's Chancery Pleading and Practice (3d Am. Ed.), at page 28 et seq., the subject is treated at length, and the following statement about the practice is abundantly supported:

"In order, however, to prevent the defendant from being deprived of his right to costs, it is a rule that if a plaintiff in a suit is a resident abroad the court will, on the application of the defendant, order him to give security for the costs of the suit, and in the meantime direct all proceedings to be stayed."

See, also, Newman v. Landrine, 14 N. J. Eq. 291, 82 Am. Dec. 249; Binns v. Mount, 28 N. J. Eq. 25; Baldwin v. Williamson, 1 Hopk. Ch. (N. Y.) 117.

In 11 Cyc. 171, the rule is stated as follows:

"In America, also, in practically all jurisdictions, it is competent and customary to require a nonresident of the state to give security for costs, this being the usual ground for requiring security. It is probably true that in most jurisdictions there is express statutory authorization for so doing; but notwithstanding this fact it may be asserted with confidence that the right to require security for costs from a nonresident suitor, whether in law or in equity, exists here as in England without any statute or rule of court specially providing therefor, and that the statutes are merely declaratory of the common law."

See cases cited in notes 92 and 93.

In section 574 of his recent treatise upon Federal Equity Practice, Mr. Street states the rule briefly:

"As regards nonresidents, the practice in the federal courts has always been to require security for costs, a requirement in conformity with the English chancery from a remote period"—citing numerous supporting cases in note 15.

See, also, 5 Decennial Digest, cases under title Costs, § 110.

But, while the power is clear, I do not think it should be exercised in the present case. A defendant's right or privilege to ask for security may undoubtedly be waived by laches, as clearly appears in several of the foregoing references; and, while the decisions differ concerning the point of time at which the defendant's delay will bar his right or privilege, I am not advised of any case in which security was exacted at so late a stage of the proceeding as the present controversy had attained when the motion under consideration was made. The foreign residence of the plaintiff appeared on the face of his bill; but, although the case has been pending for several months and the defendants have answered fully, and although an unusual number of motions have been presented to the court for decision, and although the parties have taken several hundred pages of testimony and have almost finished the preparation of the case for final hearing, no effort was made until very recently to require the entry of security. If a real need for security existed, it must have been apparent long ago. No peculiar situation and no special circumstances are averred; and in my opinion, therefore, the defendants must be held to have waived whatever right they may have had originally to ask for protection.

The motion is refused.

See Winkley Co. v. Bowen (C. C.) 180 Fed. 624.