## In re PUGET SOUND POWER & LIGHT CO.

## VON HERBERG v. CITY OF SEATTLE et al.

(Circuit Court of Appeals, Ninth Circuit. March 14, 1927. Rehearing Denied April 18, 1927.)

No. 5057.

Judges ⬥⟶44—District Judge held not disqualified, because a taxpayer, from trying suit involving city's handling of utility funds.

District Judge *held* not disqualified, by reason of being a general taxpayer, from trying suit involving right to enjoin city from transferring utility funds and from paying principal or interest on purchase bonds for city railway, removing from railway fund any moneys until certain warrants payable out of railway funds were paid, and requiring authorities to pay into railway fund all gross revenue of railway system.

On Application for Mandamus.

Application by the Puget Sound Power & Light Company to determine whether Judge Neterer was disqualified from trying a suit entitled "J. G. Von Herberg v. City of Seattle et al.," wherein defendant asked that the Puget Sound Power & Light Company and plaintiff be restrained and required to interplead. Petition dismissed.

James B. Howe, Edgar L. Crider, and Emory E. Hess, all of Seattle, Wash., and Garret W. McEnerney, of San Francisco, Cal., for petitioner Puget Sound Power & Light Co.

Jay C. Allen, R. P. Oldham, and D. G. Eggerman, all of Seattle, Wash., for Von Herberg.

Thomas J. L. Kennedy, Corp. Counsel, and J. Ambler Newton and A. C. Van Soelen, Asst. Corp. Counsels, all of Seattle, Wash., for city of Seattle.

Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.

HUNT, Circuit Judge. This is a petition of the Puget Sound Power & Light Company, called the Traction Company, for a writ of mandamus. The question presented is whether Judge Neterer is disqualified from trying a suit (removed from the state to the federal court) entitled "Von Herberg, Plaintiff, v. City of Seattle, a Municipal Corporation," and certain officials of the city, Defendants, and J. G. Von Herberg and Puget Sound Power & Light Company, cross-defendants.

In his complaint Von Herberg alleges that he is a resident and taxpayer of Seattle, and owns and holds certain warrants designated as city railway fund warrants, which are payable from money in the city railway fund, but which are marked "Not paid for lack of funds"; that he also owns utility bonds issued by the city, payable only out of the city light and power fund and the water fund utility of the city; that in January, 1919, the Traction Company made a contract with the city for the sale of the street railway system, to be paid for in special utility bonds of the city; that ordinances were passed by the city in December, 1918, relating to the acquisition of street railway lines and issuing bonds in payment therefor, and providing for the creation of a special fund to pay the principal and

interest of such bonds; that pursuant to the ordinances and the contract, in April, 1919, possession of the railway system was delivered, and the city delivered to the Traction Company utility bonds in form set forth in the ordinance, the bonds dated March 1, 1919; that at the time of acquiring the railway system, knowing it would be impossible to pay the interest and principal on the purchase bonds, unless a substantial portion of the cost of operating and maintaining the railway was "diverted from the general fund and other special funds" of the city, the city authorities, "with the design indirectly to charge the cost of acquiring said system to the general fund," unlawfully charged a large portion of the cost of operation and maintenance to other funds, and paid such costs out of "such special funds or out of the general funds of said city," to the end that large sums have been advanced to the railway fund from time to time since the system was acquired by the city; that in 1926 the city failed to pay in cash operating expenses of the system, and issued warrants (marked "Not paid") on the city railway fund, although there were moneys on hand in the city treasury sufficient to pay all the warrants issued for the operation of the system; that the city authorities threaten to continue to issue warrants (stamped "Not paid," etc.) during 1927 to liquidate the operating expenses of the railway during the calendar year, although there will be sufficient funds available from the revenue and operation of the railway system to pay all operating and maintenance costs as they become due; that the city authorities will continue to set aside into a so-called bond redemption fund railway fund moneys, received from the operation and revenues of the railway system to pay interest and principal on the railway bonds on March 1, 1927, and that the city treasurer is turning over to the bond redemption fund entire gross earnings received each day from the street railway; that, there being no other funds in the city treasury available for the payment of wages of employés or to pay costs of operation, the city, commencing December 24, 1926, issued warrants, stamped "Not paid for want of funds," in payment of the wages of such employés and for cost of operation and maintenance; that there was and is in the city treasury revenue received from the operation of the railway system far in excess of all the then and now outstanding warrants, but that officials are holding such moneys to pay the amounts next due on the utility bonds; that the city authorities threaten to issue further warrants so stamped to pay operating charges, and in order to divert the gross revenue from the operating expenses of the street railway system, defendants, in November, 1926, drew on the city railway fund certain fictitious warrants in order to get money unlawfully out of the city railway fund; that the authorities are holding and will hold, unless restrained, all of the gross revenue of the railway until the amounts aggregate sufficient to make the payment due on the bonds March 1, 1927, and that, if payments are made on that day, it will be impossible for defendants to pay in cash when they become due any of the operating expenses of the railway for months thereafter, and warrants will be issued, stamped as aforesaid; that warrants so drawn and threatened to be drawn for wages and operating expenses are drawn on the city railway fund, and should legally be paid as fast as they are issued and presented out of earnings of the street railway, but because of the wrongful diversion to the bond redemption fund there is not and will not be money to pay such warrants, and that there are no funds "belonging to the city or any of its utility undertakings out of which the cost of operating and maintaining" the street railway system can be paid, "except from funds derived from earnings" of the street railway system; that the railway utility has always been insolvent, and that all of the debts of the railway fund are payable "only" out of the revenue of the street railway, with the exception of the bonds aggregating $775,000, which bonds, with interest, are also a general obligation of the city; that the laws of the state under which the railway system was sold by the Traction Company to the city, and under which the purchase bonds were issued, require that the cost of operation should be paid only out of the gross revenue from the operation of the railway system, and that, before any of the revenue of the railway is applied to the payment of the purchase bond, provision first must be made for cash funds with which to pay labor and operation costs; and that, if defendants are allowed to do the acts complained of in the complaint, plaintiff and all taxpayers of the city and all warrant holders of the street railway fund will not only be taxed to pay an illegal indebtedness, but the value of their securities will be depreciated and lost.

For another cause of action plaintiff pleads that on January 3, 1927, the city

wrongfully paid and transferred from the water fund to the city railway fund a certain sum of money, and that the officials further threaten to divert from various department and utility funds additional moneys to the city railway fund unless restrained, and that they also threaten to transfer moneys from other utility funds of the city to street railway fund or bond redemption fund, without applying the same to the warrants referred to or to be issued for operating the railway.

The prayer is for injunction against defendants: (1) From using any money from any utility fund, including the water and light funds, of the city in the operation or maintenance of the street railway, or paying principal or interest into the municipal railway bond redemption fund, and from charging or transferring to other departments any portion of the cost out of any other utility fund appropriated and available for the maintenance of any other department of the city; (2) from making any payment on principal or interest of the bonds issued for the purchase of the railway system, and from removing from the city railway fund any moneys or credits until all warrants issued, payable out of the railway fund, for operation and maintenance have been paid in full; (3) until all warrants drawn and to be drawn on the railway fund for operation and maintenance have been paid in full, that defendants be required to pay into the city railway fund for operation and maintenance of the system all gross revenues of the system; and (4) for general relief.

The state court granted a temporary restraining order. The city answered, denying material averments, pleading the ordinances relevant, admitting that certain bonds were issued against the railway fund before the purchase of the railway, which are a general obligation of the city, pleading res adjudicata by the judgment of Twichell v. Seattle, 106 Wash. 32, 179 P. 129, and the intention to pay interest and principal due on the bonds on March 1, 1927. It asked that the Traction Company and Von Herberg be restrained and be required to interplead. The Traction Company, a Massachusetts Corporation, petitioned for removal, alleging that in Von Herberg's suit there are separable controversies, in only two of which the Traction Company is interested; one between Von Herberg and the Traction Company wherein Von Herberg seeks to have his warrants decreed superior to the Traction Company bonds, and the interest thereon, and in which the city has no interest, and another

which pertains to those certain warrants which are claimed to be superior charges upon gross revenues to the charge in favor of the Traction Company bonds.

Removal was ordered, and in the federal court the city moved to dissolve the restraining order on the ground that all warrants against the city railway fund issued December 24, 1926, and prior thereto, have been called for payment and can be paid in cash out of the railway fund. The Traction Company then moved the court to certify to the senior Circuit Judge of the Ninth Circuit that Judge Neterer was disqualified, in that he is concerned in interest in the suit, because he is a taxpayer in Seattle. Section 20, Judicial Code (Comp. St. § 987). Affidavits in support of the motion set up in substance that, if Judge Neterer should decide the suit in favor of plaintiff, he as a taxpayer would be entitled to share in such relief, while if he should decide against Von Herberg, if Von Herberg's allegations are true, Judge Neterer would be taxed with Von Herberg to pay an illegal indebtedness.

Judge Neterer held that the affidavit failed to state facts sufficient in law, and refused to certify to the senior Circuit Judge as contemplated by section 20 of the Judicial Code. A show-cause order was issued by this court. Judge Neterer filed a return, setting forth that the issue in the suit involves three special utility funds of the city of Seattle, the railway, light, and water funds; that the Traction Company is concerned only with the railway fund, in an effort to protect it against a prior claim for operation and maintenance of the railway; that he has no special interest in either of such special funds, and that a determination of the issue in litigation would in no way affect any proprietary interest of his by any judgment that might be rendered; and that as a taxpayer and a citizen he is in no way concerned in interest in the suit.

In Asia v. Seattle, 119 Wash. 675, 206 P. 366, a suit by taxpayers to enjoin the city from using general funds to pay expenses of operation and maintenance of the street railway now here involved, the Supreme Court of Washington, referring to Twichell v. City of Seattle, 106 Wash. 32, 179 P. 129, where a taxpayer sought to enjoin the city and the Traction Company from entering into a contract whereby utility bonds were to be delivered for the purchase of the system, decided that the general taxes of the city cannot be affected by a claim as to validity or status of a warrant or bond payable only out of special funds, or funds created by ac-

tion of the corporate authorities of the city of Seattle in operating and maintaining the street railway system acquired by purchase from Puget Sound Light & Power Company, involved in the present litigation. In the Asia Case the court was emphatic in holding that by no action of the city or its officials could the general funds of the city be used to defray expenses of operation and maintenance of the railway system, and that in no event could the burden be shifted to the shoulders of the taxpayers, who have had no opportunity to say whether they will or will not accept the hazard. Injunction was ordered to be granted, enjoining any encroachment upon the general fund, or in placing the burden in any degree upon the taxpayers.

In Seattle v. Puget Sound Power & Light Co. (C. C. A.) 15 F.(2d) 794, we quoted from Twichell v. City of Seattle, supra, and also from Asia v. Seattle, supra, and agreed with the decisions of the state court that the authorities of the city could not create any general indebtedness against the city by the contract of purchase. We think the scope of the several decisions cited extends far enough to establish the proposition that the Traction Company has no vested right to compel the payment of operating and maintenance charges out of the general funds of the city, even though the proceeds of the railway are insufficient for that purpose after the payment of the purchase-money bonds.

It may be granted that as an individual taxpayer Judge Neterer might institute a suit to enjoin the city authorities from unlawfully diverting moneys from the general fund of the city to any of the special utility funds referred to in the litigation; but that is afield of this case, where the pleadings are confined to the use and applicability of special funds in which the general taxpayer has no pecuniary or personal concern. Although, as already stated, Von Herberg alleges that the authorities with knowledge that the interest and principal on the purchase bonds could not be paid unless a substantial part of the operating and maintenance charges was diverted from the "general fund and other special funds, did with the design, indirectly to charge" the cost of acquisition to the general fund, unlawfully charge a large portion of operation and maintenance to "other funds" and paid such costs out of such special funds, or out of the general fund, to the end that there has been advanced to the railway fund a certain large sum, still he does not give the court to understand what he means by "indirectly,"

or what definite position he means to take in alleging payments out of such special or general funds.

Such averments are much too vague and indefinite to warrant an inference that there has been a diversion by which the general fund of the city has been drawn upon. We know, too, that the averments were made after the decision of the Supreme Court in Asia v. Seattle, supra, and presumably after the trial court, as commanded by the Supreme Court, enjoined the city and its officials from in any manner encroaching upon the general fund to pay obligations of the railway system, or placing a burden in any degree upon the taxpayers in relation to that system. Surely we cannot construe the allegations as a charge of disobedience of the injunction decision of the Supreme Court. We therefore take the prayer of the complaint as indicating to the court that Von Herberg seeks injunction against the use of moneys from utility funds and the charging and transferring of utility funds, and from paying principal or interest upon purchase bonds, and removing from the railway fund moneys, until certain warrants payable out of railway funds have been paid, and that the authorities pay into the railway fund all gross revenue of the railway system. With such matters Judge Neterer as a general taxpayer has no concern in interest, and we hold that he was right in refusing to make the certificate requested.

The petition is dismissed.