**LONG et al. v. STITES et al.**

**DEERING et al. v. SAME.**

Nos. 6280, 6281.

Circuit Court of Appeals, Sixth Circuit.
March 18, 1933.

Greenberry Simmons, of Louisville, Ky. (Horace M. Barker and Simmons & Barker, all of Louisville, Ky., on the brief), for appellants.

Allen P. Dodd, of Louisville, Ky. (Dodd & Dodd and Henry J. Tilford, all of Louisville, Ky., on the brief), for appellees.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

The original bill was filed by Margaret W. Long and George M. Cushing, her trustee, against forty-seven defendants. There followed three amended bills, and, finally, on June 19, 1931, plaintiffs, with leave of the court, filed an amended and substituted bill. The jurisdiction was based upon diversity of citizenship and the averment of the requisite statutory amount. Six of the defendants, to wit, Vogt, Minary, Duncan, Dodd, Drummond, and Bohmer, were sued as trustees. Drummond having died, Metcalfe, who succeeded him as a trustee, was made a defendant to the amended and substituted bill.

This bill alleged that prior to April 22, 1927, the National Bank of Kentucky (herein called the bank) and the Louisville Trust Company (herein called the trust company) were engaged in banking at Louisville; that on that date a trust agreement was entered into between the stockholders of both the bank and the trust company and the defendants-trustees. A copy of this agreement was filed as Exhibit A to the original bill. The bill further alleged that by the terms of this agreement the stockholders of the bank and of the trust company deposited with the trustees their stock certificates, and, thereupon, the trustees issued to the respective owners of such stock trustees' participation certificates, representing their pro rata share in the combined shares of both the bank and the trust company and constituting an indivisible trust estate.

The bill alleged that the defendants, other than the trustees, were directors of the bank and the trust company, respectively, and as such, in virtue of the trust, constituted an advisory committee or associate trustees. It is sufficient to say that the bill alleged that acting under the trust agreement the trustees and advisory committee promoted a new bank styled "The BancoKentucky Company" (herein called the Banco Company) and induced the holders of over 75 per cent. of the trustees' participation certificates to exchange them for stock in the Banco Company; that the Banco Company

thereby became the owner of over 75 per cent. of the certificates and the large majority beneficiary of the indivisible trust estate; that plaintiffs and about sixty-five other persons, similarly situated, retained their certificates and refused to exchange them for Banco Company stock; that, in virtue of the trust agreement, the defendants, both the trustees and the members of the advisory committee, became directors of the Banco Company, and that in its promotion and management as a banking institution the defendants not only neglected their duties as trustees and as members of the advisory committee, but in divers ways and practices wasted the trust estate, mismanaged the trust, and caused large losses both to plaintiffs and to the bank and the trust company, as a result of which both institutions closed their doors and were placed in the hands of receivers; that such mismanagement and waste lessened or destroyed the value of the trustees' participation certificates held by plaintiffs and all others similarly situated.

By article X, subsection 1 of the trust agreement, it was provided that the trust might be terminated "by vote of the owners of not less than two-thirds in amount of the Trustees' Participation Certificates, such vote to be taken at a special meeting called for that purpose; of which notice shall be given in writing thirty days in advance of such meeting as above provided." The amended and substituted bill alleged that, after the original bill was filed, the defendants-trustees called such a meeting but that only a few of the certificate holders attended and that the Banco Company owning a large majority of the shares of the trustees' participation certificates caused a resolution dissolving the trust to be passed.

While the case was pending in the District Court, Joseph S. Laurent, who had been appointed receiver of the Banco Company by the Jefferson Circuit Court of Louisville, where the affairs of the Banco Company were being administered, by leave of the court filed his petition therein against the trustees, defendants herein, and alleged that he was the holder of certificates representing five hundred and forty thousand, four hundred eighty-four trustees' participation shares in the trust estate and sought to have the shares of stock of the bank and of the trust company represented by such shares delivered to him pursuant to the resolution of December 26, 1930, dissolving the trust.

On May 28, 1931, the Jefferson Circuit Court sustained this petition as a class action

and ordered Laurent to prosecute it for the benefit of all owners of trustees' participation certificates, and on June 4, 1931, the court adjudged that, the trust having been dissolved, the trustees should distribute all the shares of the bank and the trust company to the holders and owners of trustees' participation certifiates, pro rata, and issued appropriate directions for the proper carrying out of the order.

On June 22, 1931, the defendants to the amended and substituted bill moved to dismiss it. This motion was not acted upon until June 1, 1932. It was then heard in connection with plaintiffs' motion to sustain the bill as a class suit and with their additional motion for an order enjoining defendants-trustees and the chancellor of the Jefferson Circuit Court from enforcing or attempting to enforce its orders and decrees confirming the dissolution of the trust and ordering the distribution of the estate. The court declined to sustain the bill as a class action but allowed plaintiffs to prosecute it in their own behalf, upon condition that they execute a bond for costs in the sum of $5,000 within ten days, and denied the injunction. Plaintiffs failed to execute the bond whereupon on June 30, 1932, the court dismissed the suit outright. In the meantime, on June 29, 1932, John S. Deering and Harvey M. Graybill, as members of a committee styled "The Committee of the Trustees' Participation Certificate Holders" on behalf of certain specific participation certificate holders and of all other participation certificate holders similarly situated, tendered their bill of intervention. This bill sought generally the same relief prayed in the amended and substituted bill and likewise sought an injunction against defendants-trustees and the chancellor restraining the enforcement of the judgments and proceedings of the Circuit Court, and on the same day the District Court declined to allow the bill of intervention to be filed. Plaintiffs thereupon appealed from the orders denying (1) the injunction against defendants-trustees and the chancellor; and (2) dismissing plaintiffs' case for failure to execute the cost bond. Graybill and Deering as trustees appealed from the order disallowing intervention.

We do not think the court erred in denying the injunction. It is clear enough that where a federal court has obtained jurisdiction of the subject-matter of a controversy it may, to protect its jurisdiction, restrain proceedings subsequently begun in a state court, and in such case section 379, Title

28, U. S. C. (28 USCA § 379), has no application. But this general rule does not control in a case where there is no substantial identity in the rights asserted and in the purposes sought in the different courts. We do not think that it has application here.

■ Plaintiffs sought an accounting of the trust estate and a decree for damages for maladministration. Petitioner Laurent, receiver, sought entirely different relief, i. e., that the trustees, in conformity with the resolution terminating the trust, should be required to distribute the shares of the bank and the trust company held by them. Under such circumstances the District Court was not authorized or compelled to protect its own jurisdiction by an injunction against the proceedings in the state court or the officers thereof. See Pacific Live Stock Co. v. Lewis et al., constituting Oregon Water Board, 241 U. S. 440, 447, 36 S. Ct. 637, 60 L. Ed. 1084; Buck v. Colbath, 3 Wall. 334, 345, 18 L. Ed. 257; Watson v. Jones, 13 Wall. 679, 715, 20 L. Ed. 666; Harrison Wire Co. v. Wheeler, 11 F. 206 (C. C.); Russell v. Detrick, 23 F.(2d) 175, 177 (C. C. A. 9).

■ Nor do we find reversible error in the order denying the intervention of Graybill and Deering as trustees. Their application to intervene was not made until after the court declined to sustain plaintiffs' bill as a class suit nor within the ten days allowed plaintiffs to file a cost bond. A denial of the right to intervene was not a termination of the rights of the interveners. They were left to their remedy by an independent bill, or, if they deemed that procedure inadequate for lack of the right to enjoin the proceedings in the state court, or otherwise, they might have sought relief, probably with less confusion and more certainty, in the state court, to which they had already been made quasi parties. Intervention is not always an absolute right. This is indicated by the word "may" found in the last paragraph of Equity Rule No. 37 (28 USCA § 723). Only those cases where the denial of intervention amounts to denial of relief furnish a basis for an appeal. Such is not this case. Cred-

its Commutation Co. v. U. S., 177 U. S. 311, 315, 20 S. Ct. 636, 44 L. Ed. 782.

■ We do not find usurpation of authority or abuse of discretion in requiring plaintiffs to execute a cost bond in the sum of $5,000. Such an order is within the inherent power of a court of equity. Plaintiffs were nonresidents and it has long been the practice of District Courts to require nonresident plaintiffs to execute cost bonds. See Karns v. W. L. Imlay Rapid Cyanide Process Co. (C. C.) 181 F. 751; also Street's Fed. Eq. Prac., § 574. If statutory authority was requisite it would seem to be found in title 28, § 731, U. S. C. (28 USCA § 731). The motion to require the bond was made before but was not acted upon until after plaintiffs had filed their amended and substituted bill. This bill, as did the original and amended bills, charged the defendants-trustees with divers acts of waste and mismanagement and sought an accounting against them for the sum of $4,100,000. We think the court might have justifiably concluded that the scope of the investigation thus foreshadowed suggested security for costs rather than payment thereof, item by item, as the case progressed. It is not complained that plaintiffs, for financial reasons, or other reasons, were unable to execute the bond.

■ Criticism is made of the order of the District Judge declining appellant's motion that he certify his disqualification to sit upon the ground that he and his wife were depositors (in amounts not shown) in the National Bank of Kentucky, and that he was, therefore, "concerned in interest" in the suit. This order was not appealed from, and no assignment of error is based upon it, but assuming that it is reviewable here, we think that the record fails to show that the judge had any such definable pecuniary interest in the suit as would disqualify him under the statute (title 28, § 24, U. S. C. [28 USCA § 24]). Neither the bank nor its receiver were parties, and the plaintiffs' action involved no issues as between either of them and the plaintiffs.

It follows that the orders and decrees complained of are affirmed.