**In re DONINTON INVESTMENTS, N.V., Debtor.**

**Bankruptcy No. 87–04303–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida.

Oct. 13, 1988.

Stuart R. Michelson, North Miami, Fla., for debtor.

Francis Carter, Coll, Davidson, Carter, Smith, Salter & Barkett, P.A., Miami, Fla., for Tropical Federal Sav. & Loan Ass'n.

David D. Bird, Miami, Fla., Asst. U.S. Trustee, Office of U.S. Trustee.

Steven H. Friedman, Miami, Fla., Trustee.

## MEMORANDUM DECISION

A. JAY CRISTOL, Bankruptcy Judge.

This cause came on to be heard upon the court's own motion. A hearing was held on Wednesday, July 13, 1988 at 10:00 a.m. to consider whether or not recusal of the judge in this cause was appropriate.

The court conducted a hearing at which it invited evidence or argument from any party. In addition, the court invited Valerie Greenberg, Phillip Stelly and their supervising editors at the *Miami Review,* a local newspaper, to appear and present relevant evidence. The court also invited Harold Moorefield, Esquire, a prominent local attorney, who was quoted in an article published in the *Miami Review* on Thursday, June 30, 1988 to share his views with the court relative to the appropriateness of recusal in this matter.

Certain facts are without dispute.

1. No party with a financial interest in this matter has suggested recusal or requested such action.

2. No other evidence has been offered by any party that would constitute a basis for recusal either under 28 U.S.C. § 455 or

under the Code of Judicial Conduct for United States Judges.

The undisputed facts of this case are that in October 1982 and prior to my appointment as a federal judge, I sold some real property to a certain party named Louis Cornejo. The sale was arranged between my real estate broker and Mr. Cornejo's real estate broker. I never met or spoke with the buyer. He made a downpayment on or about October 15, 1982 and paid the balance owed which was secured by a note and mortgage over a period of two years and a few days. It is reported that he was under indictment at this time but the indictment was sealed and did not become public knowledge until a few months before his last payment was due and made. I had no personal knowledge of this indictment then and learned of it only when it was reported to me on June 29, 1988 by Valerie Greenberg of the *Miami Review.*

A voluntary petition was filed in this case on November 30, 1987. I performed judicial duties in the Doninton case without knowledge that Louis Cornejo was a principal in the corporation and a stockholder thereof. A review of the schedules filed in this case shows that the name Luis Cornejo and his attorney, Henry A. Lopez–Aguiar, were listed in the schedules. I advised Valerie Greenberg on June 29, 1988 that I had not seen either name in the schedules. To see either name in the schedules, would have meant nothing to me as I had forgotten both names and was only able to confirm this transaction by looking at the documents in my file which indicate a sale to Luis Cornejo through his attorney Henry A. Lopez–Aguiar.

Based on these findings, there is no doubt that the headline of the *Miami Review* on Thursday, June 30, 1988 "BANKRUPTCY JUDGE DID BUSINESS WITH DEBTOR NOW BEFORE HIM" is false and misleading. The debtor in this case is Doninton Investments, N.V. I, as a judge and even before becoming a judge, never did business with Doninton Investments, N.V. I, as a judge, never did business with Luis Cornejo. Years prior to becoming a judge, I had a business transaction to which Mr. Cornejo was a party. Mr. Cornejo is neither a debtor nor has he ever appeared before me.

A suggestion of the appearance of impropriety is of deep concern to me, in particular, as well as to the entire judiciary. Canon 2 of the Code of Judicial Conduct of United States Judges mandates:

A judge should avoid impropriety and the appearance of impropriety in all his activities.

A commentary to Canon 2 of the Code of Judicial Conduct states:

Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges.

This is a truism. Likewise, public confidence in the judiciary is eroded by irresponsible, false headlines in newspapers.

A careful reading of the entire text of the story following the false headline establishes no fact which would support recusal nor any suggestion of impropriety. Nevertheless, the headline itself gives a clear message that something is wrong in the bankruptcy court. Newspapers seldom print stories about situations where everything is as it should be. The clear implication of the headline is to warn the public:

Danger, There is Impropriety in the Bankruptcy Court. You Probably Won't Get a Fair Shake There.

If everyone who noticed the headline also read the entire aritcle, then no harm would result. In this case, substantial harm is perceived and there is no remedy for it.

One of the blessings of living in this free country is the Constitutional guarantee of freedom of the press. The free hand of the fourth estate is protected in rushing to proclaim the news to the public at large. Ever since *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the mere showing of falsity in a newspaper article and its subsequent damage are insufficient to sanction the fourth estate in the absence of malice. Proof of malice is usually not easy and is frequently impossible. In this case, there was no malice. Valerie Greenberg, Phillip Stelly and their editors were no doubt interested only

in proclaiming the news on a day when not much was new. The *Miami Review* has been published in the South Florida area for many years and has earned a reputation as an accurate reporter of the judicial scene. Recently, the paper has rapidly grown and expanded its services. From a statistical format, the *Miami Review* has evolved to include more dramatic presentation of the news rather than the precise and accurate presentation of legal events which was its specialty under its prior ownership. It is unfortunate that rapid expansion and the desire to deliver the news bears with it the price of reduced accuracy in the material presented. While it may be suggested that this lack of accuracy is intended to further newspaper sales, I personally would doubt that motive in this case. The reporter contacted me on the morning of June 29, 1988 and the article appeared the next day without the benefit of my offer to turn over to the writers my complete file on the real estate transaction and a copy of my order setting the hearing to consider recusal which was generated by the reporter's inquiry. In the legal system, we deem it unfair to make the charges and judge the outcome. In the press, it is apparently acceptable to generate the story and also write about it.

THE ISSUE:

In view of the absence of objection by any party in interest and that all creditors are apparently being paid 100 cents on the dollar, including any accrued interest, should the court consider recusal based on a false and misleading headline in a prominent local newspaper?

The subject of recusal is controlled primarily by 28 U.S.C. § 455:

§ 455. Disqualification of justice, judge, magistrate, or referee in bankruptcy.[1]

(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

(c) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

(1) 'proceeding' includes pretrial, trial, appellate review, or other stages of litigation;

1. Referee in bankruptcy is now a Bankruptcy Judge.

(2) the degree of relationship is calculated according to the civil law system;

(3) 'fiduciary' includes such relationships as executor, administrator, trustee, and guardian;

(4) 'financial interest' means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:

(i) Ownership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates in the management of the fund;

(ii) An office in an educational, religious, charitable, fraternal, or civic organization is not a 'financial interest' in securities held by the organization;

(iii) The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a 'financial interest' in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) Ownership of government securities is a 'financial interest' in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(e) No justice, judge, magistrate, or referee in bankruptcy shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification. (June 25, 1948, c. 646, § 1, 62 Stat. 908; Dec. 5, 1974, P.L. 93–512, § 1, 88 Stat. 1609.)

The statutory mandate in 28 U.S.C. § 455(b) deals with five specific circumstances wherein a judge "shall disqualify himself." Disqualification may not be waived. 28 U.S.C. § 455(a) requires a judge "to disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Is this such a proceeding?

The most recent case decided by the United States Supreme Court on this subject involved a situation in which a judge had an actual financial interest in a case. *Liljeberg v. Health Services Acquisition Corp.*, —— U.S. ——, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). The case is inapplicable to the present, but two sentences from the decision are deemed instructive and worthy of inclusion herein.

1. A violation of § 455(a)—which requires a judge to disqualify himself in any proceeding in which his impartiality might reasonably be questioned—is established when a reasonable person, knowing the relevant facts, would expect that a judge knew of circumstances creating an appearance of partiality, notwithstanding a finding that the judge was not actually conscious of those circumstances.... § 455(a) does not require judges to perform the impossible by disqualifying themselves based on facts they do not know, ....

I have been unable to find a case that upheld recusal in a situation that involved a financial transaction which occurred between a party and a person who later became a judge but was not a judge at the time of the transaction. There are however numerous cases which discuss varying interests of a judge and determine that certain interests are insufficient to constitute "a financial interest" that requires recusal. See *United States v. Ravich*, 421 F.2d 1196 (2d Cir.1970), *cert. denied* 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970); *Long v. Stites*, 63 F.2d 855 (6th Cir.1933), *cert. denied* 290 U.S. 640, 54 S.Ct. 59, 78 L.Ed. 556 (1933). *United States Fidelity & Guaranty Co. v. Lawrenson*, 34 F.R.D. 121, *aff'd*. 334 F.2d 464 (4th Cir.1964), *cert. denied* 379 U.S. 869, 85 S.Ct. 141, 13 L.Ed. 2d 71 (1964) talks about a judge's ownership of stock in a corporation which he sold many years before the trial. These facts did not require disqualification. *Id.*

Perhaps the closest case deals with ownership by a judge and spouse in the stock of an oil company of a subsidiary, twice

removed, from the litigant. This was determined to be insufficient to reasonably question the court's impartiality. *Mavis v. Commercial Carriers, Inc.*, 408 F.Supp. 55 (C.D.Cal.1975).

In the *Mavis* case, certain statements were made by defendant's counsel to plaintiff's counsel outside the presence, hearing, or knowledge of the judge. This communication did not constitute grounds for the judge's disqualification. Similarly, in this case, this court had no knowledge until informed by the reporter on June 29, 1988.

Many practical situations have also been considered. For example, when a judge pays electric utility rates to plaintiff electric power company, this situation does not constitute the requisite "financial interest" for disqualification under 28 U.S.C. § 455 *In re: Puget Sound Power & Light Co.*, et al., 18 F.2d 57 (9th Cir.1927).

A chief judge of a circuit, who had been a law school lecturer at a law school when a partner of a defendant in the case before him had been the law school dean, did not give rise to such interest as would disqualify the judge. *McNeil Brothers v. Colon*, 264 F.2d 186 (1st Cir.1959).

Allegations that judges had "unique relationships" with the legal profession and financial interests in the state of Minnesota, were considered to be too vague and insufficient to require disqualification. *Scarrella v. Mid West Federal Savings & Loan*, 536 F.2d 1207 (8th Cir.1976).

A judge's personal knowledge of kidnapping of a personal friend in an incident not related to the pending case was rejected as not grounds on which the courts impartiality might be reasonably questioned. *United States v. Clark*, 398 F.Supp. 341 (E.D. Pa.1975)

The fact that the court is personally familiar with or even friends with potential witnesses does not necessarily predispose the court in favor of them as to require recusal. *Hirschkop v. Virginia State Bar Association*, 406 F.Supp. 721 (E.D.Va. 1975).

Cases involving prior service and private practice are generally uniform in finding no reason for disqualification.

The mere fact that a judge had been, *prior to his appointment*, attorney for some of the defendants on matters not connected with case to be tried, did not disqualify him to try such case. *Car v. Fife*, 156 U.S. 494, 15 S.Ct. 427, 39 L.Ed. 508 (1895).

A federal judge did not abuse his discretion in refusing to disqualify himself on grounds that while in private practice he had acted as attorney for one of the parties in unrelated matters. *Darlington v. Studebaker–Packard Corp.*, 261 F.2d 903 (7th Cir.1959), *cert. denied* 359 U.S. 992, 79 S.Ct. 1121, 3 L.Ed.2d 980.

A trial judge did not abuse his discretion in refusing to disqualify himself in a criminal trial on the basis that he entered an appearance, *while a practicing attorney*, at the first meeting of creditors in the defendant's voluntary bankruptcy proceedings. He was not so related as to render it improper for him to sit on the bankrupt's subsequent criminal trial for misappropriation of funds of a federally insured bank, where the judge had no knowledge of disputed evidentiary facts and where there was no reasonable basis for inferring that he was biased or prejudiced. *United States v. Seiffert*, 501 F.2d 974 (5th Cir. 1974).

A federal judge was not disqualified from hearing a law action against a railroad although prior to his appointment, the law firm of which he was a member served as legal counsel for the railroad in a particular county not involved in the lawsuit. *Duncan v. Atlantic C.P.L.R. Co.*, 223 F. 446 (S.D.Ga.1915).

The mere fact that the judge was, more than a decade earlier, a law partner of an attorney that later appeared before him was patently insufficient to require disqualification. *Bumpus v. Uniroyale Tire Co. Division of Uniroyal, Inc.*, 385 F.Supp. 711 (E.D.Pa.1974).

Recusal has been reviewed in 72 ALR 2nd 443.

Only one case can be found that relates to publicity. In that case, the argument was made that a trial judge should have disqualified himself because certain publicity with respect to the trial judge occurred during the course of trial. The argument was rejected. There existed no grounds in which the court's impartiality might reasonably be questioned. See *United States v. Clark,* 398 F.Supp. 341 (E.D.Pa.1975).

In an interesting libel case, the parties to a libel suit involving statements contained in a book published by defendants waived any possible prejudice of the judge as a result of the judge being mentioned in the book and receiving an autographed copy from defendants when attorneys notified the judge that they desired him to stay in the case. See *Neiman Marcus Co. v. Lait,* 107 F.Supp. 96 (S.D.N.Y.1952).

The time for seeking recusal is discussed at great length in many cases. In this case, that time may well have passed insofar as the parties are concerned. The case has been pending since November 1987. It is almost completely administered and it does not appear that there are any further discretionary rulings to be made. Likewise, there has been no motion for recusal filed by any party nor has an appeal been taken by any party of any of the contested matters decided to date.

The Code of Judicial Conduct for United States Judges as updated, looks heavily to 28 U.S.C. § 455.

In particular, we are directed to Canon 2 mentioned above:

A judge should avoid impropriety and the appearance of impropriety in all his activities.

Canon 3:

A judge should perform the duties of his office impartially and diligently.

Canon 3 C deals with disqualification:

C. *Disqualification*

(1) A judge shall disqualify himself in a proceeeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) He has a personal bias or prejudice concerning a party, or personal knowl-

edge of disputed evidentiary facts concerning the proceeding;

(b) he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(c) he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(d) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) is acting as a lawyer in the proceeding.

COMMENTARY

The fact that a lawyer in a proceeding is affiliated with a law firm with which a lawyer-relative of the judge is affiliated does not of itself disqualify the judge. Under appropriate circumstances, the fact that 'his impartialty might reasonably be questioned' under Canon 3C(1), or that the lawyer-relative is known by the judge to have an interest in the law firm that could be 'substantially affected by the outcome of the proceeding' under Canon 3C(1)(d)(iii) may require his disqualification.

(iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) is to the judge's knowledge likely to be a material witness in the proceeding;

(e) he has served in governmental employment and in such capacity participated as counsel, advisor, or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy.

(2) A judge should inform himself about his personal and fiduciary financial inter-

ests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

(3) For the purposes of this section:

(a) the degree of relationship is calculated according to the civil law system;

## COMMENTARY

According to the civil law system, the third degree of relationship test would, for example, disqualify the judge if his or his spouse's father, grandfather, uncle, brother, or niece's husband were a party or lawyer in the proceeding, but would not disqualify him if a cousin were a party or lawyer in the proceeding.

(b) 'fiduciary' includes such relationships as executor, administrator, trustee, and guardian;

(c) 'financial interest' means ownership of a legal or equitable interest, however small, or a relationship as director, advisor, or other active participant in the affairs of a party, except that:

(i) ownership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates in the management of the fund;

(ii) an office in an educational, religious, charitable, fraternal, or civic organization is not a 'financial interest' in securities held by the organization;

(iii) the proprietary interest of a policy holder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a 'financial interest' in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) ownership of government securities is a 'financial interest' in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(d) 'proceeding' includes pretrial, trial, appellate review, or other stages of litigation.

The Advisory Opinions published with the Code of Judicial Conduct for United States Judges do not contain an opinion exactly on point.

Opinion 25 indicates that the fact that a judge's son is affiliated with the firm appearing before the court, in itself, does not disqualify the judge, although under some circumstances, it might be appropriate to recuse.

Opinion 26 indicates that the fact that a judge is insured by a health insurance company does not require his recusal from a case where that health insurer is a party.

Opinion 38 deals again with a father—son, where the father is the judge and the son is an assistant U.S. attorney. It follows the guidelines of Opinion 25.

Opinion 45 again involves judges sitting in cases involving health insurance companies when the judge is insured by the company and the opinion is consistent with Opinion 26.

Opinion 49 advises that the fact that a judge holds a very small interest in a publicly owned trade association, does not constitute "a financial interest" within the meaning of the statute which should require recusal.

Opinion 52 holds that membership by the court in a bar association does not disqualify the judge from hearing matters related to the bar association.

Perhaps more helpful in this case, is Opinion 29. It makes it clear:

(1) A judge should refrain from financial and business dealings that tend to reflect adversely on his impartiality, interfere with the proper performance of his judicial duties, exploit his judicial position, or involve him in frequent transactions with lawyers or persons likely to come before the court on which he serves.

This Opinion draws a clear line relative to business transactions of a judge while sitting as a judge. By inference, it implies that the proscription is "while sitting as a judge." It seems to imply that dealings of a type that might disqualify a sitting judge have no bearing if they occurred prior to the judge assuming his judicial position.

Opinion 29 is supported by Opinion 20. In that instance, the wife of the judge owned 150 shares of stock worth $10,000 in a large American corporation. The Opinion holds that the judge or his wife should be considered one and the same. The opinion references 28 U.S.C. § 455 which states:

Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest.

The Opinion then refers back to Opinion 29 which reads:

A judge should abstain from performing or taking part in any judicial act in which his personal interests are involved.

The Opinion discusses the issue of what constitutes a "substantial interest" and whether the judge's independent determination of "substantial" might coincide with that of the parties or the public. It suggests a procedure for notifying parties of the amount and extent of a financial interest in a case and allowing the court to have the clerk determine secretly whether or not all parties wish the judge to remain in the case after disclosure of the extent of the judge's actual financial interest. This is an excellent procedure which is intended to relieve parties and counsel of any possible intimidating effect of expressing a desire for the judge to be recused to the judge. The procedure, however, is not required in this case since there is no question that I have no financial interest in the debtor or in or with the debtor's principals or any other party. The primary issue here is whether recusal is appropriate through the genesis of a false and misleading newspaper headline.

## CONCLUSIONS

Advisory Opinion 11 dealt with a situation where one of the attorneys appearing before the judge was a long-time friend and was also the godfather of one of the judge's children. The Opinion points out that friend and godfather are not within the "near relative" status referred to in Opinion 13. The Opinion discusses a two-pronged test:

1. Whether the judge feels capable of disregarding the relationship, and,

2. Whether others can reasonably be expected to believe that the relationship is disregarded.

I have applied this two-pronged test and have come to the following conclusions:

1. There has never been a relationship between myself and the debtor. There has hardly been a relationship between myself and Louis Cornejo or Mr. Cornejo's attorney. I did have a business transaction with Mr. Cornejo which was at arms length and arranged through two real estate brokers. I never saw him personally. The transaction was concluded many years before I became a judge. I forgot the name of Mr. Cornejo and the name of his attorney and was unable to identify them without retrieving the old file and discovering those names on the documents. The relationship had nothing to do with any decision I made up to June 29, 1988. I question whether these facts create a relationship. I know of no reason why it would affect my judgment or prevent me from being impartial in any past, present or future aspect of this case. The only possible consideration in that area is the disclosure by the press that Mr. Cornejo was indicted and charged with drug activities. I am known to have very strong feelings against drug abuse and people who traffic in illegal drugs. Nevertheless, I believe in the keystone of our system of justice which holds that: "A person is innocent until proven guilty." Even a convicted drug dealer is entitled to due process of law. I, therefore, know of no reason why I cannot fairly and impartially deal with any further matter in this case.

2. The final question is whether others can reasonably be expected to believe that the relationship, if one in fact exists, is disregarded. To deal with this issue simply, there are cases and Advisory Opinions that indicate that a friendly relationship is in itself not sufficient to support disqualification. In this case, there has been no friendly relationship whatsoever. The relationship was a business transaction conducted at arms length in a cold and sterile fashion. It created neither a financial in-

terest nor a personal relationship of the closeness that might disqualify. A complete examination of my old file indicates that I saw Mr. Lopez–Aguiar two or three times. On one occasion, I addressed the attorney for Mr. Cornejo in a letter as "Dear Henry:". This is as friendly as it got. Accordingly, it appears that others, who are aware of all the facts, should reasonably believe that the "relationship" created by a business transaction completed years before I came on the bench can be disregarded. Accordingly, and upon consideration, it is

ORDERED that after a full and open hearing where no facts or evidence were offered or introduced to suggest a basis for disqualification and where all parties affirmatively supported my continued participation, it is clear that disqualification should not result from a false and misleading newspaper headline. The court noted in open court that judges do make errors and we have appellate courts to correct their errors. Newspapers also make errors but we have no appellate newspapers.[2]

DONE and ORDERED.

**2.** The reporter who wrote the article, attended the hearing but declined an invitation to speak or otherwise participate.