**In re Elio A. CALZADILLA, Debtor.**

**Bankruptcy No. 92–10939–BKC–SMW.**

United States Bankruptcy Court,
S.D. Florida.

March 5, 1993.

Robert L. Roth, Standing Chapter 13 Trustee, Miami, FL.

Lynn H. Gelman, Asst. U.S. Trustee, Miami, FL.

Before SIDNEY M. WEAVER, Chief Judge, and A. JAY CRISTOL and ROBERT A. MARK, Bankruptcy Judges.

## ORDER ON HEARING EN BANC REGARDING THE UNAUTHORIZED PRACTICE OF LAW

THIS CAUSE came before the Court for hearing *en banc* before Chief Judge Sidney M. Weaver, Judge A. Jay Cristol and Judge Robert A. Mark in the afternoon of October 30, 1992. The issue before the Court is the conduct of Daniel Schramek and Sal Davide and a Florida corporation known as the L.A.W. Clinic, Inc. Daniel Schramek and Sal Davide appeared in proper person and were permitted to represent their interests *pro se*. Mr. Schramek attempted to represent the interests of the L.A.W. Clinic, Inc. but was not permitted to do so based on the long standing doctrine that corporations must be represented by an attorney-at-law, licensed to practice and admitted in this district. 28 U.S.C. § 1654.

## BACKGROUND

Elio A. Calzadilla is a debtor who suffered financial misfortune and, as a result, filed a Chapter 13 petition with this Court on February 14, 1992. A number of motions on a number of different matters were brought before the Court for hearing in this case when it became apparent to the Court that the conduct of Daniel Schramek, Sal Davide and a Florida corporation known as L.A.W. Clinic, Inc. in performing certain services for this Debtor, and the public at large, may rise to the level of practicing law without a license.

On May 29, 1992, the case came before Judge A. Jay Cristol who was sitting for Judge Sidney M. Weaver on that day. The matter came before the Court for confirmation of Debtor's Chapter 13 Plan and upon the Court's Order to Show Cause regarding the unauthorized practice of law. (C.P. 10). The Court confirmed Debtor's plan (C.P. 18) but, by order entered June 23, 1992, titled "Order Continuing Hearing on Order to Show Cause Regarding the Unauthorized Practice of Law and Directing the U.S. Trustee to Investigate" (C.P. 16), the other matters were reset for further hearing.

The order continuing the hearing indicated that there was evidence that the L.A.W. Clinic, Inc., Mr. Sal Davide and Mr. Daniel Schramek were preparing plans (Chapter 13 plans) and giving legal advice regarding issues involved in Chapter 13 proceedings and in connection with other Chapters of the United States Bankruptcy Code. The Court also noted the foregoing parties' failure to comply with Fed.R.Bankr.P. 2014 and 2016. The order temporarily enjoined the L.A.W. Clinic, Inc., Mr. Sal Davide and Mr. Daniel Schramek from performing these activities until the matter was again before the Court at the rescheduled hearing on August 28, 1992 before Chief Judge Sidney M. Weaver. (C.P. 16).

The intervention of Hurricane Andrew resulted in the hearing scheduled August 28, 1992 being rescheduled before Judge Weaver to October 23, 1992 (C.P. 23). On October 23, a hearing was held at which time the Court took testimony and rescheduled a further hearing, *en banc*, for October 30, 1992.

## THE ROLE OF TYPING SERVICES

The issue before the Court in this case is the role of typing services in the United States Bankruptcy Courts. Mr. Daniel Schramek resides in St. Petersburg, Florida. He is the owner and operator of L.A.W. Clinic, Inc., a Florida corporation which offers services to persons wishing to file petitions in United States Bankruptcy Courts. Mr. Schramek describes himself as an "independent paralegal". Mr. Sal Davide operates three or four of the L.A.W. Clinics out of three offices in Dade and Broward County, Florida, in the Southern District of Florida. Mr. Davide stated that he attends brown bag luncheon seminars, as well as various other seminars, subscribes to Colliers, a bankruptcy treatise, and has read other materials about bankruptcy. Mr. Davide considers himself informed.

Unfortunately for Messrs. Schramek and Davide and the public at large, such self-taught lawyering is out-dated and unacceptable as a practice. Although this form of education was acceptable in the days of Abraham Lincoln, it became outmoded by the year 1887, when law schools became popular; and, in the decade of the 1970's, law schools graduated more law graduates than they had in the previous hundred years.

The courts of the various states and the federal courts have for many years regulated who may practice before them and the qualifications necessary to appear and represent other people. Although the systems vary widely from state to state, and even from federal district to federal district, it is generally a uniform minimum standard that persons practicing law in state or federal courts at least be members of a state bar or admitted to the highest court of a state of the United States or a federal court. Persons practicing law are held to the same commercial and business standards of all other persons doing business throughout the United States. In addition, persons practicing law are held to a higher standard which requires them to comply with certain ethical criteria and codes of conduct prescribed generally by the American Bar Association and adopted in various modified forms by state bar associations throughout the United States.

Mr. Schramek sees the Florida Bar Association as a business entity in the nature of a closed business organization or association which limits trade and violates the antitrust laws. He argues that the Florida Bar should be abolished and he has filed a lawsuit in United States District Court for the Middle District of Florida, entitled *Em-*

*ilio J. Ippolito et al. v. The State of Flori-da, et al.,* Case No. 92–880 CIV–T–22A. Mr. Schramek sees himself as a crusader on behalf of the poor and oppressed. If that is his sole motive, then surely he has the blessings of the entire bankruptcy judicial system upon his head. In contradiction to his self-serving representations, however, it appears that in doing good on behalf of poor folks, he takes compensation from the afflicted.

It was the intent of Congress to relieve the burden of the afflicted debtor and grant a potential for a new start when it first enacted the Bankruptcy Act and when it later enacted the Bankruptcy Code in 1978. This Court, and all of the bankruptcy courts in the United States, look with favor on any system or method of offering assistance to debtors who have suffered financial misfortune and who seek help through the bankruptcy system.

Congress in its wisdom, or perhaps as a result of life time experience, was also aware that when death is about to occur, vultures circle the dying, waiting for an opportunity to personally profit from the misfortune of another. Congress enacted a number of safeguards to prevent the financially distressed from being preyed upon by the vulture type in our society. Federal Rules of Bankruptcy Procedure 2014 and 2016, and 11 U.S.C. §§ 327–330, were created in an effort to make certain that help provided to afflicted victims of financial distress is provided at a fair and reasonable rate. Gouging, overreaching or taking advantage of the financially afflicted is to be avoided whenever possible. The Court has taken judicial notice of the situation in California where so-called typing services have taken outrageous advantage of clients and creditors and have distorted the intent of the Bankruptcy Code for their own personal profit, notwithstanding the fallout upon the debtors to whom they provide services and the creditors that they sometimes abuse in the process.

Now we come to the issue before the Court: the role of typing services, in general, and the typing services, in particular, offered by Mr. Schramek and his corpo-ration, L.A.W. Clinic, Inc. and provided with the help of Mr. Davide in this district. In any area where Mr. Schramek or Mr. Davide can provide needed services to financially distressed individuals and do so at a fair and reasonable cost, and the services are of value and are services which they are capable of providing, they should be encouraged and commended and the road paved for them to make easier their way. On the other hand, in any area where Mr. Schramek and Mr. Davide wish to provide services which they are not qualified to provide or wish to charge exorbitant or excessive fees or charges for the services, this Court has a Congressionally mandated duty to oversee those activities and to prevent abuse of debtors and creditors.

The issue of what typing services can and can not do or may and may not do has been dealt with in this district in *In re Bachmann,* 113 B.R. 769 (Bankr.S.D.Fla. 1990). The Bankruptcy Court for the Southern District of Florida, sitting *en banc,* adopts the *Bachmann* decision and restates the guidelines set forth therein for the benefit of any who wish to provide services to financially distressed persons in connection with filing bankruptcy petitions.

Typing or secretarial businesses in the State of Florida may sell printed materials purporting to explain legal practice and procedure to the public in general and may sell sample legal forms. Such businesses may provide secretarial services and may type bankruptcy forms for clients, provided they only copy the written information furnished by the clients. They may not engage in personal legal assistance in conjunction with typing service business activities, including "correcting" what they believe to be errors or omissions. These businesses may not advise clients as to various remedies and procedures available in the bankruptcy system, and may not make inquiries or answer questions as to the completion of particular bankruptcy forms or schedules. Moreover, they may not advise how best to fill out the bankruptcy forms or otherwise complete the bankruptcy schedules.

One problem the courts are confronted with is determining what was actually said when typing services take information orally. Notes of a typing service representative are insufficient. Accordingly, the Court suggests that typing services, when taking information from clients orally, record the conversations and preserve the tapes. The tapes should be made available at the first meeting of creditors. The Court sees no reason why a typing service cannot charge additional compensation for the cost of using and storing the tapes. The charge is insignificant when offset by the precision of the record.

Another problem that arises is one with regard to advertising. Typing services may not use the word "paralegal" on business cards. They may advertise business activities of providing secretarial, notary and/or typing services. They may also advertise that they sell bankruptcy forms and general printed information with regard to those forms. They may not advertise in any misleading fashion which leads a reasonable lay person to believe that the typing service offers the public legal services, legal advice, or legal assistance regarding bankruptcy. They may sell books or other printed material about bankruptcy law, but they may not sell or hand out selective material from such books or publications as that would constitute legal advice which they are not qualified to give.

## THE PROBLEM WITH TYPING SERVICES

Most debtors are not knowledgeable about bankruptcy law. Congress intended the honest debtor to obtain certain benefits from a bankruptcy. Foremost is the fresh start with the right to retain exempt property. Florida has opted out of the federal exemption system and has chosen to have Florida law applicable to exemptions. This body of law is extensive and complicated. *See* 11 U.S.C. § 522 and F.S. § 222 *et seq.* Hardly a debtor is aware of it or understands it. Without competent legal advice in this area, debtors may lose substantial valuable property that they may otherwise have been entitled to retain. This is not theoretical. The Court has seen instances

where debtors have lost property to the value of thousands of dollars, in some instances the result of not having received any advice and, in other instances, the result of having received incorrect advice from so-called typing services that attempted to do more than typing.

Debtors need advice on debts and obligations that are excepted from discharge pursuant to 11 U.S.C. § 523 and on conduct and activities that might result in the denial of their discharge pursuant to 11 U.S.C. § 727. This advice is not available from a legitimate typing service and the Court has observed sad examples of loss of discharge or dischargeability as a result of a debtor following unqualified typing service advisors who, for whatever good intention, exceeded their legal authority and tried to advise the debtor—whether for good intention or for profit.

Debtors need information about the remedy of stay relief under 11 U.S.C. § 362 and how it may affect them. Rapid dispossessions from homes or apartments have occurred to the shock and dismay of the debtors, when the property or lease could have been saved with proper advice.

## GUIDANCE FOR CRUSADERS

The Court admires Mr. Schramek's zeal and is in full accord with the stated goal of Mr. Schramek's crusade to provide assistance to financially distressed persons at fair and reasonable rates. The Court notes that the filing of the District Court lawsuit is one way to pursue change in the United States of America. Seeking a change in existing legislation is another. The Court calls to the attention of Mr. Schramek that our system of government in the United States does not permit individual citizens to obey those laws which they like and disregard those which they do not like nor to obey those court orders which they like and disobey those court orders which they do not like. Courts are not perfect and courts make mistakes. If a court is wrong or a law is wrong, the remedy is to correct the court's error through the appellate process or correct the legislative error through re-

medial legislation. If the law were otherwise and each citizen picked and chose the laws and court decisions they liked and disregarded those that they did not like, chaos would reign. That is the reason why even if a law is ill-advised or a court decision is wrong, it must be obeyed pending correction through the process. If not obeyed, a violation of the law or a violation of a court order is subject to sanctions.

### THE MOTIONS FOR RECUSAL

■ Mr. Schramek has filed motions for each bankruptcy judge in this district to recuse himself because each judge, or at least two of the judges, are named as defendants in the lawsuit Mr. Schramek filed in District Court and because all the judges in the Southern District of Florida are members of the Florida Bar. (C.P. 24, 25, and 27). Section 455, Title 28 of the United States Code, provides the basis for recusal. Those standards will not be reviewed in this opinion. However, the Court recognizes how convenient it would be if a litigant drew through the blind filing system a judge that he or she did not particularly like and could take that judge off the case merely by filing a lawsuit against him or her. Further, if we applied the standard that membership in the Florida Bar was a reason to disqualify judges in this matter, or any other, it would appear that there would not be a judge, either state or federal, within the state of Florida, that could hear his case. The Court has considered the arguments for recusal filed by Mr. Schramek and finds them to be without merit. *See In re Doninton Investments, N.V.*, 97 B.R. 112 (Bankr.S.D.Fla.1988); *In re Frottier*, 130 B.R. 616 (Bankr.S.D.Fla. 1991).

### THE MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY

■ Mr. Schramek has filed a motion to dismiss or stay these proceedings until his federal court action is resolved. (C.P. 28). Again, the reasoning of the motion is faulty. If the litigant could stop the wheels of justice from turning merely by filing a suit against the judges, what a wonderful Alice in Wonderland world this would be. All those charged with criminal offenses would have their cases on hold while all the judges of the land spent their time in each others' courts dealing with litigation brought by the various criminal litigants designed solely to stop their cases from going forward. Likewise, the civil arena would be in a similar state of chaos with every litigant who desired delay bringing lawsuits against the judiciary rather than going forward on the merits of their individual cases.

A careful examination of the motion to dismiss or stay and consideration of the arguments presented by Mr. Schramek in open court again establish a lack of merit and no basis for granting the motion.

### REVIEW OF THE COMPENSATION PAID BY THE DEBTOR IN THIS CASE

■ First, it appears that no affidavit has been filed in this case by Mr. Schramek, Mr. Davide or L.A.W. Clinic, Inc. regarding the $650 which was charged to Elio A. Calzadilla to file this case. The record seems clear that the case was filed on the evening prior to a foreclosure sale to prevent the sale from taking place. As such, the case was arguably subject to dismissal as a bad faith filing. *See In re Phoenix Picadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988). The petition itself, is a beautifully produced document, apparently generated by a computer and a sophisticated computer program. The substance of the document, however, is insufficient. When the *pro se* Debtor appeared before the standing Chapter 13 trustee, the entire case was subject to dismissal. But for the kind heart and cooperation of the standing Chapter 13 trustee, who assisted the Debtor in revising the non-confirmable plan presented and modifying it so that it could be a confirmable plan, the Debtor would have been out of court as well as having been out $650.00. The petition was without value and might have subjected the Debtor to sanctions under the *Phoenix Picadilly* doctrine.

In this particular case, good fortune seems to have smiled upon all parties as the Debtor had a reversal of fortune and was able to work out a settlement with the mortgagee holding the foreclosed mortgage on his property. This has permitted the Debtor to delete that mortgage from the plan and the home was saved to the joy of the Debtor, the creditor, the Court and the respondents herein. This is not the usual situation and, in most cases, the result is not a happy ending.

## VALUE OF THE SERVICES

It is undisputed that Elio A. Calzadilla paid $650 for the preparation of this petition. (C.P. 2). The Court finds this amount unreasonable for the services provided. The cost of the bankruptcy forms used herein likely do not exceed $40.00. The cost for the copies of the completed petition and schedules likely do not exceed $30.00. The filing fee does not exceed $120.00 and the cost for completing the forms does not appear to exceed $105.00 (based on an estimated three (3) hours of typing at $35/hr.). The Court believes the foregoing estimates are generous, at a total compensable sum of $295.00, which amount includes the cost of the $120.00 filing fee.

Accordingly, it is

ORDERED that:

1. The motions to recuse are DENIED.

2. The motion to dismiss or, alternatively, to stay is DENIED.

3. The motion for sanctions against the standing Chapter 13 trustee is DENIED, for the reasons stated on the record at the *en banc* hearing.

4. Daniel Schramek, Sal Davide, and the L.A.W. Clinic, Inc. are prospectively enjoined, from this date forward, from engaging in the unauthorized practice of law and are admonished to pay heed to the limitations placed upon their activities as a "typing service" set forth in this opinion and the *Bachmann* opinion, adopted herein. (The Respondents, Daniel Schramek and Sal Davide, have affirmatively stated that they have no desire to practice law without authorization and have no objection to the entry of an injunction against them prohibiting same. The Court makes no finding that any prior act of Daniel Schramek or Sal Davide of the L.A.W. Clinic, Inc. has violated the prohibition against the unauthorized practice of law.)

5. The Respondents, Schramek, Davide and the L.A.W. Clinic, Inc. are ordered and directed to return to the Chapter 13 Debtor, Elio A. Calzadilla, the sum of $355.00. This amount represents the excessive charges derived by subtracting the reasonable compensation authorized herein in the amount of $295.00 from the $650.00 paid by Debtor to Respondents.

6. Respondents shall file a certificate with the Court certifying the return of the overcharges, which certificate shall include a receipt for said sum signed by the Debtor. The certificate shall be filed on or before *March 22*, 1993.

DONE and ORDERED, en banc.