In re Sandra J. SAMUELS, Debtor.

Sandra J. SAMUELS, Plaintiff,

v.

AMERICAN LEGAL CLINIC, INC., and Suseen Longley, a/k/a Susan Guthrie, individually and d/b/a American Legal Clinic, Inc., Defendants.

Bankruptcy No. 93–5398–BKC–3F3.
Adv. No. 94–91.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Dec. 29, 1994.

Lynn Poyner Drysdale, Jacksonville, FL, for debtor/plaintiff.

Robert H. Wood, Jacksonville, FL, for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This proceeding is before the Court upon a complaint in an adversary proceeding filed pursuant to Rule 7001(1), (7), and (9), and Rule 2017(a), Federal Rules of Bankruptcy Procedure, to recover monetary damages and to obtain injunctive and declaratory relief pursuant to 11 U.S.C. § 329, and pursuant to the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes. A trial was held on September 27, 1994 and the proceeding was taken under advisement.

Subject matter jurisdiction is conferred on this Court by 28 U.S.C. § 157(b)(1) and 28 U.S.C. § 1334. This is a core proceeding. The plaintiff, SANDRA J. SAMUELS, alleges the defendant, SUSEEN LONGLEY, performed services in a Chapter 13 bankruptcy case which constituted the practice of law without a license and overcharged her for the typing services Ms. Longley could have legally provided.

### FINDINGS OF FACT

At all times material to these proceedings, the defendant, SUSEEN LONGLEY, f/k/a SUSEEN GUTHRIE, has operated and she

continues to operate AMERICAN LEGAL CLINIC, INC., a "legal clinic" in Jacksonville, Florida. Ms. Longley incorporated AMERICAN LEGAL CLINIC, INC. in 1990 and has been the sole officer, director and shareholder of the corporation subsequent to incorporation. She maintains control over all hiring, advertising and business operations of the corporation. Ms. Longley advertises her services in the Florida Times Union and in the Southern Bell Yellow Pages in the Jacksonville telephone directory. The telephone advertisements are placed exclusively in the section entitled "Legal Clinics" (Plaintiff's Exhibit "4"). Ms. Longley testified at the trial that she had no control over where the advertisements were placed in the telephone directory. The telephone company made those decisions.

Ms. Samuels contacted Ms. Longley because she had received a Summons and Complaint concerning the foreclosure of her home. Ms. Longley advised Ms. Samuels to file a Chapter 13 bankruptcy case, which Ms. Longley could prepare and file. Ms. Samuels did not have knowledge of bankruptcy law or the bankruptcy process, nor how a bankruptcy case might affect her foreclosure case, prior to the time she contacted Ms. Longley or during the time Ms. Longley was preparing her bankruptcy case. Ms. Longley told Ms. Samuels that a Chapter 13 case would be necessary to try to save her home from the mortgage foreclosure lawsuit.

Ms. Longley prepared and filed the following documents for the Plaintiff: a Chapter 13 bankruptcy petition and the accompanying schedules; a Statement of Financial Affairs; a Statement of Intention; a Chapter 13 Plan; a Motion for Valuation and an accompanying Affidavit As To Value.

According to the testimony at the trial, Ms. Longley made the following decisions in Ms. Samuels' bankruptcy case: the type of bankruptcy case to file, the status of Ms. Samuels' creditors, the nature and value of her property, the method of retention of her property, the exemptions to assign to her property, which creditors to pay in the Chapter 13 Plan and the amount to pay to those creditors. Ms. Longley also decided it would be appropriate to file a motion to value in the bankruptcy case. Ms. Longley was the exclusive provider of consumer services to Ms. Samuels. The Chapter 13 Plan prepared and filed by Ms. Longley for Ms. Samuels did not meet the requirements of 11 U.S.C. § 1322. The Motion to Value which was prepared, filed and served by Ms. Longley on behalf of Ms. Samuels was denied by the Court because it was improperly served.

Within one year of the filing of the bankruptcy case, Ms. Samuels paid a total of $215.00 to Ms. Longley for the preparation of bankruptcy documents. (Plaintiff's Exhibit "5") In addition to these sums, Ms. Samuels gave Ms. Longley money orders totaling $160.00 payable to the Clerk of the United States Bankruptcy Court for the bankruptcy filing fee.

To prepare a bankruptcy case, Ms. Longley uses a form she developed entitled "Bankruptcy Application" (Plaintiff's Exhibit "2"). She uses this form as a guide to feed information into a computer programmed to prepare bankruptcy petitions, schedules, statements, motions and Chapter 13 Plans. Her computer uses the Matthew Bender bankruptcy form software which is designed for use by attorneys. It is necessary for Ms. Longley to paraphrase and explain bankruptcy concepts in order to obtain the requisite information from consumers and place it in the proper form for the software. It is sometimes necessary for Ms. Longley to make inquiries and answer questions pertaining to bankruptcy laws, process or concepts, while obtaining information required by her bankruptcy computer program.

During the process of preparing bankruptcy forms, Ms. Longley stated she provides consumers with forms usually provided by the Bankruptcy Court Clerk and the Trustee directly to pro se debtors. Ms. Longley uses a form provided by the Chapter 13 Trustee exclusively to pro se debtors and attorneys to prepare Chapter 13 Bankruptcy Plans. Ms. Longley testified that she uses *Ronald Bergwerk, Florida Bankruptcy Practice, Third Edition* as a reference guide for her use, and she sometimes points out passages in this book to consumers to help them understand bankruptcy concepts when they have questions.

620

Ms. Longley is not an attorney. There are no attorneys involved in Ms. Longley's process of preparing bankruptcy documents for consumers, and no attorney supervises her work at the clinic. However, each of the former clients testifying at Ms. Longley's request testified that they were certain that Ms. Longley would be able to produce a legally sufficient bankruptcy case. Ms. Longley testified that she does not consider herself merely a typing service.

Ms. Longley prepared a Chapter 13 bankruptcy petition and the accompanying schedules; a Statement of Financial Affairs; a Statement of Intention; a Chapter 13 Plan; for Thomas Bouchelle (Plaintiff's Exhibit "7"), for Valerie Zellner (Plaintiff's Exhibit "8") and for Charles and Drucilla Blanton (Plaintiff's Exhibit "9"). Ms. Longley prepared and filed a Chapter 13 bankruptcy case for Thomas Bouchelle approximately one month after she prepared and filed a Chapter 7 case on his behalf. The Chapter 13 case was dismissed. Valerie Zellner was advised of her right to decrease the value of a secured claim in her Chapter 13 bankruptcy case by Ms. Longley. Valerie Zellner testified that she was not aware of Florida laws cited as providing exemptions in her Chapter 13 bankruptcy case. Charles Blanton testified that Ms. Longley decided the method of retention of the property listed on his Statement of Intention form.

Ms. Longley used the phrase "F. CONST. X.4"[1] to describe the law providing the exemption for each type of property listed upon each of the witnesses' "Schedule C—Property Claimed as Exempt". According to the testimony of each of the former clients, Ms. Longley selected this language and this law, since none of them even knew what it meant.

1. Indicating Florida Constitution, Article X, § 4.

2. Fla.Stat. § 222.25(1) (1993).

3. The Court notes that subsequent to the filing of this case, the Bankruptcy Reform Act of 1994 was passed by Congress and signed by the President. The provisions of § 110 of the Bankruptcy Code were created by this act and deal directly with the issues in this case. Among other things, the new code section prohibits businesses, such as Ms. Longley's, from using the word "legal" in their name, or advertising under the "legal" heading in a newspaper or phone book. It also

This law was used for Charles Blanton's automobile, even though his case was filed subsequent to the change in Florida law providing a separate exemption for automobiles.[2]

Neither Ms. Longley nor AMERICAN LEGAL CLINIC, INC. has insurance to cover expenses created by errors or omissions arising from her provision of bankruptcy services and her preparation and filing of bankruptcy cases. The Plaintiff contends that Ms. Longley is engaging in the unauthorized practice of law in her preparation of bankruptcy petitions through American Legal Clinic, Inc., and that she is dispensing legal advice that she is not qualified to give. Whether Ms. Longley engaged in the unauthorized practice of law in regards to her assistance to Ms. Samuels in the preparation of her bankruptcy case is the central issue in this case.

### CONCLUSIONS OF LAW

■ Traditionally, when dealing with cases involving the unauthorized practice of law, United States Bankruptcy Courts, have looked to state law for guidance. *In re Bachmann*, 113 B.R. 769 (Bankr.S.D.Fla. 1990); *In re Minchew*, 150 B.R. 275 (Bankr. N.D.Fla.1992); *In re Anderson*, 79 B.R. 482 (Bankr.S.D.Cal.1987); *In re Arthur*, 15 B.R. 541 (Bankr.E.D.Pa.1981).[3] The Florida Constitution, Article V, § 15 prohibits persons not licensed as attorneys-at-law from practicing law within the State of Florida.

■ The question of what constitutes the practice of law is a complex one that many courts have pondered. Practicing law involves much more than merely appearing in front of a court. The bulk of a lawyer's time

requires the petition preparer to file a statement of compensation within 10 days from the date of the filing of the petition and allows the court to force the preparer to disgorge any unreasonable fee. The code section reaffirms the fact that petition preparers cannot give legal advice, and provides for injunctive and monetary damage relief for violations of the section. Although § 110 is not binding on the case at bar, since it was signed into law subsequent to the filing of this case, the Court urges the parties to take note of its provisions and begin immediate compliance with them.

is spent in researching problems and advising her clients as to her opinion. There is no precise definition of what is and is not the practice of law, but some courts have tried to devise one. A good definition is set forth in *Howton v. Morrow,* 269 Ky. 1, 106 S.W.2d 81 (Ct.App.1937) which says:

> The practice of law is not limited to the conduct of cases in Court. According to generally understood definition of the practice of law in this country, it embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before Judges and Courts, and, in addition, conveyancing, the preparation of legal instruments of all kinds and, in general, all advice to clients and all action taken for them in matters connected with the law and an "attorney at law" is one who engages in any of these branches of the practice of law.

In *State ex rel. The Florida Bar v. Sperry,* 140 So.2d 587, 591 (Fla.1962), *rev'd* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), the Supreme Court of Florida formulated its definition of what constitutes the practice of law:

> ... [I]f the giving of such advice and performance of such services affects important rights of a person under the law, and if the reasonable protection of the rights and property of those advised and served requires that the persons giving such advice possess legal skill and a knowledge of the law greater than that possessed by the average citizen, then the* giving of such advice and the performance of such services by one for another as a course of conduct constitutes the practice of law.

The purpose behind prohibiting laymen from practicing law and restricting the practice to those qualified and authorized by the Supreme Court, is the protection of the public. There is a longstanding public policy of protecting the public from being advised and represented in legal matters by unqualified persons over whom the judicial department can exercise little, if any, control. *Bachmann, supra* at 773. In addition, attorneys are held to a higher standard than a mere businessman, which requires them to comply with certain ethical criteria and codes of conduct prescribed by the individual state bars and more generally, by the American Bar Association. *In re Calzadilla,* 151 B.R. 622, 624 (Bankr.S.D.Fla.1993) (en banc).

Several courts who have addressed this issue have laid out guidelines for petition preparers to follow, listing what they can and cannot do to avoid the unauthorized practice of law. The Florida Supreme Court and Florida bankruptcy courts have made it clear that persons wanting to provide services in the bankruptcy area are limited to typing or transcribing written information provided to them by a consumer onto pre-prepared forms. See *Calzadilla, id.* at 625 and *The Florida Bar v. Schramek,* 616 So.2d 979, 987 (Fla.1993). The *Calzadilla* court provided specific guidance for those who wish to provide services to financially distressed persons in connection with filing bankruptcy petitions:

> Typing or secretarial businesses in the State of Florida may sell printed materials purporting to explain legal practice and procedure to the public in general and may sell sample legal forms. Such businesses may provide secretarial services and may type bankruptcy forms for clients, provided they only copy the written information furnished by the clients. They may not engage in personal legal assistance in conjunction with typing service business activities, including "correcting" what they believe to be errors or omissions. These businesses may not advise clients as to the various remedies and procedures available in the bankruptcy system, and may not make inquiries or answer questions as to the completion of particular bankruptcy forms or schedules. Moreover, they may not advise how best to fill out the bankruptcy forms or otherwise complete the bankruptcy schedules.

*Calzadilla* at 625 adopting the decision of Judge Cristol in *Bachmann, supra* at 769.

The court in *In re Bright,* 171 B.R. 799, 802 (Bankr.E.D.Mich.1994) exhaustively sum-

marized what other courts had called the unauthorized practice of law.

The following activities have been defined as the practice of law in other jurisdictions:

(1) Determining when to file bankruptcy cases. *In re Herren*, 138 B.R. 989, 995 (Bankr.D.Wyo.1992).

(2) Deciding whether to file a Chapter 7 or a Chapter 13. *In re Arthur*, 15 B.R. 541, 543 (Bankr.E.D.Pa.1981).

(3) Filling out or assisting debtors in completing forms or schedules. *In re Glad*, 98 B.R. 976, 978 (9th Cir. BAP 1989); *In re McCarthy*, 149 B.R. 162, 166 (Bankr.S.D.Cal.1992); ... *Bachmann supra* at 773–74; *Calzadilla supra* at 625.

(4) Solicitation of financial information and preparation of schedules. *Herren, supra* at 994; *In re Grimes*, 115 B.R. 639, 643 (Bankr.D.S.D.1990).

(5) Providing clients with definitions of legal terms of art. *Herren, supra* at 995.

(6) Advising debtors which exemptions they should claim. *McCarthy, supra* at 166; *In re Webster*, 120 B.R. 111, 113 (Bankr.E.D.Wis.1990).

(7) Preparing motions and answers to motions. *McCarthy, supra* at 166; *Webster, supra* at 113.

(8) Advising debtors on dischargeability issues. *Arthur, supra* at 543.

(9) Advising debtors concerning the automatic stay. *Arthur, supra* at 543.

(10) Habitual drafting of legal instruments for hire. *Arthur, supra* at 543.

(11) Correcting "errors" or omissions on bankruptcy forms. *Calzadilla, supra* at 625.

(12) Advising clients as to various remedies and procedures available in the bankruptcy system. *Calzadilla, supra* at 625.

■ In applying this law to the facts in the case at bar, the Court notes that Ms. Longley has prepared and filed bankruptcy documents for many consumers in the greater Jacksonville area, including Ms. Samuels, who had contacted the clinic after receiving a mortgage foreclosure complaint. Consumers have differing levels of knowledge concerning the Federal Bankruptcy Code and the present and future effect of bankruptcy upon their debts, financial concerns, and credit. Consumers also have varying levels of knowledge concerning the relevance of the information which must be included in the requisite bankruptcy documents. Many consumers, including Ms. Samuels, do not understand the legal concepts involved in the filing of a bankruptcy case, including the categorization of creditors, the valuation of property of the estate, the dischargeability of debts and the general entitlement to discharge.

Ms. Longley has exceeded the parameters established by other courts for typing services, and has provided legal services, advice, and assistance in violation of Florida law. The plaintiff, Ms. Samuels, had no knowledge of bankruptcy and how it would affect her mortgage foreclosure case, prior to, or at the time her bankruptcy case was prepared and filed. Ms. Longley chose the type of bankruptcy case Ms. Samuels would file based upon Ms. Samuels' representations concerning her mortgage foreclosure lawsuit. Ms. Longley also made inquiries to Ms. Samuels in an effort to compile, edit and formulate her bankruptcy petition, schedules and statements, including the Statement of Intentions, without receiving any substantive assistance from Ms. Samuels concerning the secured, unsecured or priority status of her debts, the value of her property, the exemptions she wished to claim or her intentions concerning her debts. The only information originating from Ms. Samuels was a list of the items of furniture she owned, and the fact that she wanted to avoid the loss of her home.

Ms. Longley prepared and filed a Chapter 13 Plan which did not meet the requirements of 11 U.S.C. § 1322. She also prepared and filed a Motion to Value and accompanying affidavit in Ms. Samuels' bankruptcy case. It is clear to this Court that the selection of the legal documents prepared and filed in this case, and the language in these documents was the product of Ms. Longley and not that of Ms. Samuels.

Ms. Longley's decision to prepare and file a Chapter 13 bankruptcy case on Ms. Samu-

els' behalf and the production of the Statement of Intention, Chapter 13 Plan and Motion to Value and accompanying affidavit requires the use of legal judgment, including legal knowledge, training, skill and ability beyond that possessed by the average lay person and, therefore, constitutes the unlicensed practice of law. *Bachmann, supra,* at 773; *McCarthy, supra* at 167.

Each of Ms. Longley's witnesses contacted the clinic to avoid the consequences of delinquencies in mortgage payments. Ms. Longley prepared and filed a Chapter 7 bankruptcy case for Thomas Bouchelle and one month later prepared and filed a Chapter 13 bankruptcy case, which was later dismissed because of deficiencies in the Chapter 13 Plan, and because his Chapter 7 bankruptcy case was still pending. Another former customer, Ms. Zellner, was not able to take advantage of a potential reduction of the amount of a secured creditor's claim by using Ms. Longley's services. At the time of the trial of this matter, Ms. Zellner's Chapter 13 case had been confirmed without Ms. Zellner's knowledge of this potential right provided by the Bankruptcy Code.

Ms. Longley's third witness, Charles Blanton, testified that Ms. Longley decided the method of retention of the property listed on his Statement of Intention form, and selected the exemptions for his property. Charles Blanton also testified that Ms. Longley pointed out passages from Ronald Bergwerk's book to help him decide which bankruptcy case to file. Ms. Longley stated that she points out different passages or sections of *Ronald Bergwerk, Florida Bankruptcy Practice, Third Edition* if persons have questions concerning the bankruptcy forms or the bankruptcy process. This book was not prepared for use by non-lawyers.[4] Contrarily, Ms. Samuels testified that she was not shown passages from the book; however, she did receive a handout which she did not read. Ms. Longley testified that she regularly provides customers with forms, usually provided directly to debtors by the Bankruptcy Court Clerk and the Trustee.

It is clear that by providing this written information that Ms. Longley is doing more than typing written information provided by the consumers. By her active role in handing out information intended for *pro se* debtors, pointing out and reviewing forms and passages from books created for use by lawyers, Ms. Longley is advising persons of their legal rights in bankruptcy. *McCarthy, supra* at 167.

Ms. Longley testified that she does not consider herself a typing service. In other words, she admits she is performing services which exceed the parameters set for non-licensed practitioners in the Bankruptcy Court. See *Bachmann, supra* at 773; *Calzadilla, supra* at 625; and *The Florida Bar v. Schramek, supra* at 987. These activities have been prohibited because of the potential it creates for misleading consumers. Ms. Longley leads her clients to believe they have obtained the assistance of someone who has special abilities, in excess of the average lay person, in the bankruptcy setting. Therefore, she is initiating a lawsuit which interjects consumers into a bankruptcy system in which they are not qualified to operate and in which they cannot fully utilize. These consumers do not realize they must conduct a federal lawsuit which involves the interpretation of federal exceptions to discharge, state property exemptions, legal categorizations of creditors, and legal rights of creditors. If consumers prepare and file their own bankruptcy cases, or have someone type the consumers' information onto blank bankruptcy forms, they originate the process, knowing they have limitations concerning their ability to engage in the practice of law in the federal court process.

Ms. Longley creates a grey area where persons feel they are putting their financial problems into the hands of someone who is equipped to prepare legally sufficient bankruptcy documents. Each of the witnesses testifying at Ms. Longley's request indicated that they were confident that she would prepare a legally sufficient bankruptcy case.

4. "This book is geared to the general practitioner who handles an occasional bankruptcy and to the commercial lawyer who at times must appear before the Bankruptcy Court." *Ronald Bergwerk, Florida Bankruptcy Practice,* Preface.

Problems created by this grey area of services were addressed by the *Calzadilla* Court:

> Without competent legal advice in this area, debtors may lose substantial valuable property they may otherwise have been entitled to retain. This is not theoretical. The Court has seen instances where debtors have lost property to the value of thousands of dollars, in some instances the result of not having received any advice and, in other instances, the result of having received incorrect advice from so-called typing services that attempt to do more than typing.
>
> Debtors need advice on debts and obligations that are excepted from discharge pursuant to 11 U.S.C. § 523 and on conduct and activities that might result in the denial of their discharge pursuant to U.S.C. § 727. This advice is not available from a legitimate typing service and the Court has observed sad examples of loss of discharge or dischargeability as a result of a debtor following unqualified typing service advisors who, for whatever good intention, exceeded their legal authority and tried to advise the debtor—whether for good intention or for profit.
>
> Debtors need information about the remedy of stay relief under 11 U.S.C. § 362 and how it may affect them.

*Calzadilla, supra* at 626.

This flaw was evident in both the plaintiff's bankruptcy case and that of Charles Blanton, as each could have taken advantage of the Florida exemption for automobiles, but were not advised by Ms. Longley that this exemption was available. In each of the bankruptcy cases introduced at trial, Ms. Longley used *"F. CONST X.4"* to describe the law providing the exemption for every type of property listed. Ms. Longley testified she was not aware of all of the Florida property exemption laws. Ms. Longley fails to ask the appropriate questions and gives or "points out" partial or incorrect information. Therefore, consumers using her services are likely to lose valuable rights allowed by the Bankruptcy Code. *McCarthy, supra* at 166; *Calzadilla, supra* at 626. However, even if Ms. Longley had given good advice and listed proper exemptions, she still would be practicing law. The issue is not that her advice was good or bad, proper or improper; rather the issue is the fact that she gave advice that she is not licensed to give.

### The Use of Computers in the Bankruptcy Process

■ A person providing services to the public cannot use the shield of a computer to conceal the unlicensed practice of law. Ms. Longley testified that the computer formulates the questions to ask customers and that she just pushes the keys. Merely suggesting what information is needed, even if prompted by a computer, exceeds the limitations imposed by Florida state and bankruptcy courts. *Calzadilla, supra* at 625. Ms. Longley testified that her computer prompts her to provide information by displaying questions concerning the debtor's financial situation. Many of these questions require legal analysis prior to being able to properly answer them. Examples include the determination of the type of debt, whether property is exempt, and the law which provides the exemption. The Bankruptcy Application (Plaintiff's Exhibit 2) used by Ms. Longley does not evoke all of the information needed to prepare a legally complete bankruptcy case. Therefore, it is necessary for Ms. Longley to actively engage in the prohibited practice of making inquiries and answering questions while completing bankruptcy forms and schedules. See *Calzadilla, supra* at 625; *Bachmann, supra* at 773.

Furthermore, Ms. Longley testified that she uses the Matthew Bender computer software to prepare her bankruptcy forms. The Court is familiar with this software, and knows that this software was designed for use by *attorneys,* not laypersons. The software is designed to expedite the process of filling out bankruptcy forms and schedules. For example, there are many places on these forms that require the debtor's name and address. The attorney need only type in the debtor's name and address once, and the computer will place it in every place required. However, there are legal decisions that have to be made to use this software. For example, the software cannot distinguish

between exempt and non-exempt property. The *attorney* must make this decision. As the expert witness on this subject testified at the trial, the program has its limitations. It doesn't ask questions that it doesn't think are relevant, but sometimes it's wrong. The attorney, when inputting the information into the system, must tell it whether it is secured or unsecured debt. It would require more information than the average lay person would possess to complete the forms using this software. Ms. Longley is not an attorney, and is in no way qualified to make these types of decisions. By using this Matthew Bender software that was designed for use by attorneys, the Court feels that Ms. Longley is engaging in the unauthorized practice of law.

Another factor to consider is that Ms. Longley's use of computer programs in the preparation of bankruptcy documents makes it clear the information provided is not the product or language of the consumer. Handwritten pro se documents usually provide more pertinent information composed in the debtor's own language, rather than the boiler-plate, universal language of the computer. As expressed by the court in *In re Evans*, 153 B.R. 960 (Bankr.E.D.Pa.1993), truly cost-conscious debtors could save the expense of the attractive typing by filling in their own forms. The Court feels that this is a significant point. These bankruptcy petition preparers may call themselves typing services, although Ms. Longley does not, but they in no way purport to be merely typing services. If all a debtor wanted was to have his forms typed, he could go to any public library or copy shop and make use of a typewriter. Debtors do not go into these places merely with the intention of having their forms attractively typed. Debtors visit bankruptcy petition preparers to get *legal advice.* Many of these businesses have the word "legal" in their name, causing the naive debtor to assume they are receiving qualified, legitimate legal advice. This can be a costly mistake.

The problems with Ms. Longley's use of the computer are twofold; one, the computer increases consumers' false sense of security that the computer will provide legal, correct

and sufficient documents. Two, the consumer still is not, and cannot be advised, that there may be problems with the dischargeability of certain debts, the retention of certain property of the bankruptcy estate, the debtor's dischargeability or the value given to their property. They cannot be advised to meaningfully question the amounts or status claimed by creditors in their Proofs of Claim. If the computer operator provides guidance in any of these areas, he or she is engaging in the unlicensed practice of law. If the computer operator does not provide this information, it is likely the pro se consumer is ineffectively utilizing the Bankruptcy Code, or increasing the risk of dismissal of the bankruptcy case.

### The Florida Deceptive and Unfair Trade Practices Act

 A finding of fraud is not necessary to sustain a violation of the Florida Deceptive and Unfair Trade Practices Act, § 501.201, et seq. (1993) (hereinafter "UDAP" or "the Act"). *Urling v. Helms Exterminators, Inc.*, 468 So.2d 451, 453 (Fla. 1st DCA, 1985). The Act does not specifically define what acts or practices constitute a violation. However, § 501.204, Fla.Stat. provides:

(1) Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

(2) It is the intent of the Legislature that, in construing Section (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to § 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1).

In *In re Fleet*, 95 B.R. 319 (E.D.Pa.1989), the court reviewed the actions of a consumer financial help service to determine if it violated the New Jersey UDAP law. Both the Florida and New Jersey UDAP laws were created to prohibit "unfair or deceptive acts or practices in the conduct of any trade".[5] The *Fleet* Court reviewed federal decisions and determined that deception was

---

5. See *Urling, supra* at 453; *Fleet, supra* at 331.

... an objective standard based upon the probable impact on the average consumer and not upon the subjective intent of the seller. Thus, it is not necessary to prove any bad intent or motive on the part of the seller in order to establish unlawful deception.

*Fleet, supra* at 332.

The *Fleet* Court expressed in a footnote that Cases interpreting the Federal Trade Commission Act (hereinafter "FTCA") note that the law is not made for the protection of experts, but for the general public, which has been defined as 'that vast multitude which includes the ignorant and unthinking and the credulous, who, in making purchases, do not stop to analyze but too often are governed by appearances and general impressions' *Beneficial Corp. v. FTC,* 542 F.2d 611, n. 11 (3rd Cir.1976) See also, *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1172 (11th Cir.1985).[6]

This Court finds Ms. Longley's services and advertisements are deceptive and, therefore, violate the Florida UDAP laws. Florida law does not sanction legal clinics which are not staffed by attorneys. The Florida Constitution provides that, "the Supreme Court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted." Fla.Const. Art. V, § 15. The Florida Supreme Court strictly regulates and supervises persons who choose to practice law, and holds those practicing law to a higher standard, which requires them to comply with certain ethical criteria and codes of conduct. The Florida Supreme Court has created a limited number of forms which may be used by lay persons in the Florida Courts. This Court is not aware of any similar accommodation in the bankruptcy courts.

The only services that can be provided at this time by non-attorneys are typing and secretarial services. Typists can only prepare documents by copying written information provided by customers. These parameters were established because the courts felt it would be clear the information transcribed would be that of the customer and not originated, suggested or otherwise prompted by the lay person providing a typing service. By going further than this service, Ms. Longley has deceptively practiced law without a license and set persons up for failure in the bankruptcy system. Additionally, Ms. Longley's violation of the Florida Constitution by exceeding the parameters created for typing services is a per se violation of the Florida UDAP laws.

Another danger arising out of the use of a bankruptcy clinic is the lack of insurance coverage for errors or omissions in preparing bankruptcy forms and pleadings. This problem is exacerbated by the eminent likelihood of these problems when lay persons engage in activities reserved primarily for licensed attorneys.

### Advertising

■ Ms. Longley's advertising is deceptive.[7] She advertises under the "Legal Clinic" heading in the telephone directory along with other attorneys. She does not advertise under the secretarial services or typing services heading, nor does she consider herself a typing service. The words used in the name of her business would lead a reasonable lay person to believe that she offers the public legal services, legal advice or legal assistance regarding bankruptcy. *Calzadilla, supra* at 626.

This Court finds Ms. Longley has exceeded these parameters in the content and placement of her advertisements, and therefore, her advertising is deceptive. Ms. Longley may only advertise business activities of providing secretarial, notary and/or typing services. She may also advertise that she sells bankruptcy forms. *Calzadilla, supra* at 626.

6. Analogous to the New Jersey UDAP law, the Florida legislature specifically provided that great weight is to be given to the federal courts' interpretation of the Federal Trade Commission Act. § 501.204(2), Fla.Stat. (1981) *Urling, supra* at 453.

7. The 1994 amendments to the Bankruptcy Code prohibit businesses, such as Ms. Longley's, from using the word "legal" in the name of the business, and from advertising under the "legal" heading in any publication. Bankruptcy Code, § 110(f).

### Reasonable Fees

██ 11 U.S.C. § 329(a) requires an attorney who represents a debtor in a case under the Bankruptcy Code, or in connection with such a case, to file with the court a Statement of Compensation, paid or agreed to be paid, for services rendered or to be rendered in connection with the case. 11 U.S.C. § 329(b) permits the court to examine the reasonableness of the compensation paid, and, if it is excessive, authorizes the court to order the return of any excessive payments made either to the estate or to the entity that made the payment. Florida bankruptcy courts use a broad definition of the word "attorney" when interpreting this provision of the Bankruptcy Code. See *Bachmann, supra* at 775.[8] Ms. Longley falls within this definition of attorney. She did not file a Statement of Compensation [9] in Ms. Samuel's bankruptcy case, nor did she file this statement in three of the four bankruptcy cases of record in this proceeding. Each of the Statements of Financial Affairs introduced into evidence at trial indicated nothing was paid to anyone, within the year prior to filing, for the preparation of the respective bankruptcy cases.

Several Florida Bankruptcy Courts have provided guidance in determining an appropriate fee to charge for the services which typing services are allowed to provide. The *Calzadilla* court determined $35.00 an hour was a generous fee for typing the forms, and found three hours were required in this case for manually typing the documents. The Court also allowed $40.00 for the cost of the forms. *Calzadilla, supra* at 625. The *Bachmann* court found a fee of $60.00 to be reasonable; this fee included one and one-half to two hours for typing the forms and $10.00 for the purchase of the forms.

**8.** "An attorney is one who is legally appointed by another to transact business for him" *Webster's New Collegiate Dictionary* 72, (7th ed.1965). Examples of attorneys that are not attorneys-at-law are attorneys-in-fact and powers of attorney. *Bachmann, supra* at 775.

**9.** The Court notes that once again, prospectively, the new Bankruptcy Code § 110(h) controls. "Within 10 days after the date of the filing of a petition, a bankruptcy petition preparer shall file a declaration under penalty of perjury disclosing any fee received from or on behalf of the debtor

██ Expert witness testimony provided at the trial suggested that $30.00 an hour would be an appropriate fee, including overhead, for the preparation of a simple bankruptcy case. By definition, the only types of cases which should be prepared by the clinics are those which do not require legal analysis or complex or lengthy preparation. The Court finds that Ninety dollars ($90.00) is a reasonable rate for the services Ms. Longley provided to Ms. Samuels in this case. This figure represents three hours for compilation of information and preparation of documents. This case took more time because of Ms. Samuels' neglect in providing information. A fee of sixty dollars ($60.00) would usually be adequate.

### Piercing the Corporate Veil

██ Ms. Longley can be held individually liable for her actions in preparing bankruptcy cases. Ms. Longley is the owner and operator of AMERICAN LEGAL CLINIC, INC. Although the clinic is incorporated, Ms. Longley can be held individually liable for her actions in preparing bankruptcy cases. *Futch v. Head,* 511 So.2d 314, 322 (Fla. 1st DCA 1987).[10] Ms. Longley is the sole officer and director of the corporation. She is solely responsible for the overall operation of the clinic, and is so completely and fully identified with the business that she can be held individually liable for violations of federal bankruptcy law or Florida UDAP violations. *Fleet, supra* at 338, 339.

██ Additionally, Ms. Longley is individually liable under Florida UDAP law because she was a direct participant in the transaction with Ms. Samuels and the other AMERICAN LEGAL CLINIC, INC. customers.

within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor."

**10.** "... [T]he Florida Supreme Court has recognized that the corporate veil may be pierced upon a showing of improper conduct or that the corporation was formed or *used* for some illegal, fraudulent or unjust purpose ..." (citing *Dania Jai–Alai Palace, Inc. v. Sykes,* 450 So.2d 1114, 1121 (Fla.1984)), (emphasis added by the *Futch* court).

*Anden v. Litinsky,* 472 So.2d 825 (Fla.4th DCA, 1985).

### Conclusion

■ Ms. Samuels is entitled to recover damages and attorney's fees and is entitled to injunctive and declaratory relief pursuant to the Florida Deceptive Trade Practices Act. The Act is intended to protect consumers from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer. *Urling, supra* at 454. This Act provides at § 501.211(1), Fla.Stat. (1993).

> Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

Actual damages, attorney's fees and costs are also provided for consumers who bring individual actions to recover losses resulting from violations of the Florida Act. See § 501.211(2), Fla.Stat. (1993).

■ The Court concludes that Ms. Longley did engage in the unauthorized practice of law in regards to Ms. Samuels' bankruptcy case and did violate the Florida Deceptive and Unfair Trade Practices Act. However, the evidence did not show that Ms. Samuels suffered any financial loss by Ms. Longley's unauthorized practice of law. She did not suffer the loss of her house in the foreclosure action, nor did she lose any exemption or discharge to which she might have been entitled. It is true that Ms. Longley was unable to prepare a confirmable Chapter 13 plan for Ms. Samuels; however, after visiting the offices of Legal Aid, and conferring with the Chapter 13 Trustee, Ms. Samuels was able to have her plan confirmed. Consequently, she suffered no damage at the hands of Ms. Longley. The Court will, nevertheless, award attorney's fees to Ms. Samuels, because Ms. Longley did act in violation of the Florida Deceptive and Unfair Trade Practices Act. A separate final judgment will be entered in accordance with the foregoing.

### FINAL JUDGMENT

This proceeding is before the Court upon a complaint in an adversary proceeding filed pursuant to Rule 7001(1), (7), and (9), and Rule 2017(a), Federal Rules of Bankruptcy Procedure, to recover monetary damages and to obtain injunctive and declaratory relief pursuant to 11 U.S.C. § 329, and pursuant to the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes. In accordance with the Findings of Fact and Conclusions of Law separately entered, it is

**ORDERED** that:

1. The Plaintiff's request for relief pursuant to 11 U.S.C. § 329 and for injunctive and declaratory relief and for attorney's fees pursuant to the Florida Deceptive and Unfair Trade Practices Act are granted. Plaintiff's request for damages is denied.

2. Ms. Longley is to return $125.00 to Ms. Samuels' bankruptcy estate within 15 days from the date of this judgment. This represents the sums in excess of a reasonable fee of $90.00 for the typing of a bankruptcy case; and,

3. Ms. Longley shall file a Statement of Compensation for each bankruptcy case she prepares in the future. Ms. Longley and the consumer must sign this Statement and it should include the following language:

> I have been advised that Ms. Longley is not an attorney and is not allowed to provide legal advice, assistance or services. Ms. Longley may provide forms or type information onto pre-prepared bankruptcy forms, manually or through the use of a computer, based upon written information provided to her by a consumer. A reasonable fee for her services has been determined by the Court to be $30.00 per hour;

4. Ms. Longley, individually or through AMERICAN LEGAL CLINIC, INC. is enjoined from practicing law as more particularly described and contained in the Findings of Fact and Conclusions of Law entered in this proceeding.

5. Ms. Longley is enjoined from using the words "Paralegal" or "Legal" in the name of her business and shall be enjoined from ad-

vertising under the "Paralegal" or "Legal" heading in any publication, including any newspaper or telephone book. Ms. Longley is enjoined from using the words "Paralegal" or "Legal" to describe her services, whether provided individually or through a business whose purpose is to prepare forms;

6. Ms. Longley is enjoined from the continued use of the Matthew Bender computer program, and any other computer software program that is designed for use only by attorneys, in the preparation of bankruptcy documents. She may only use a computer software program designed for use by lay persons which can be completed by consumers and used to provide information to a computer without Ms. Longley's assistance or input;

7. Ms. Longley is enjoined from using any texts in connection with her business, that are designed for use by attorneys. Ms. Longley is enjoined from quoting passages from texts, or directing her customers to certain passages in texts. Ms. Longley is enjoined from directing her customers to any source except the bankruptcy code, the law library or an attorney.

8. Jacksonville Area Legal Aid, Inc. is entitled to recover attorney's fees and costs pursuant to §§ 501.211, 501.2105, Fla.Stat. (1993). The amount of attorney's fees and costs shall be assessed by affidavits submitted by the parties herein, within 30 days from the date of this judgment.

9. The Court reserves jurisdiction to enforce the injunctive provisions of this judgment.